Argued and submitted October 17, 1986, reversed and remanded for reconsideration January 28, 1987

BACKARDJIEV,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(EAB 85-AB-1944; CA A38898)

731 P2d 1063

Michael H. Marcus, Portland, argued the cause and filed the brief for petitioner. With him on the brief was Mark B. Williams, Portland.

Susan P. Graber, Portland, argued the cause and filed the brief for respondent ESI. With her on the brief were Robert S. Sola, Portland, and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondents Employment Division, Raymond P. Thorne, Employment Appeals Board, Ross Morgan and ESI.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner seeks judicial review of a decision of the Employment Appeals Board (EAB) denying him unemployment compensation. EAB adopted and affirmed the referee's decision that petitioner had been fired for misconduct.[1] ORS 657.176(2)(a). We reverse and remand for reconsideration.

The referee found:

"(1) The claimant was employed as a quality assurance auditor by Electro Scientific Industries, Inc. (E.S.I.), from October 8, 1984, to August 16, 1985. (2) The claimant initially applied for this position by completing an application for employment form provided by the employer. (3) The application for employment requires that the applicant fully reveal prior work history (*see* Exhibit 6). (4) The application for employment also requires the applicant to certify that the answers are truthful and no information relative to the application has been knowingly withheld. (5) The application states that any misrepresentation will be cause for termination. (6) The claimant demonstrated during the hearing that he is sufficiently competent and that he has sufficient fluency in the English language to have fully understood the instructions and cautions on the application for employment that he completed and signed on July 26, 1984. (7) When the claimant completed the application for employment, he did not list his last two employers. (8) The claimant was interviewed for the open position by the employer's quality assurance manager, and the quality assurance manager inquired as to whether the claimant had any employment experience in the United States (on the application the claimant had listed his last job as being with a manufacturing company in Bulgaria, which ended in 1981). (9) During the interview with the quality assurance manager, the claimant did not reveal his last two jobs, both of which were in Oregon. (10) In December 1984, during a social visit to the claimant's home, the quality assurance manager learned that the claimant had worked for other employers in Oregon. (11) The claimant's manager was concerned that the claimant had not previously told him of this prior employment and he questioned the claimant about this matter in late December 1984 or early January 1985. (12) At that time, the claimant admitted that he had worked for two other companies in Oregon prior to his employment with

---

[1] EAB adopted the referee's decision, OAR 472-30-020(1), with the exception of the second paragraph, which is not relevant to this review.

E.S.I. (13) At that time, the manager was only concerned with the claimant's apparent lack of candidness; and the question of a falsification of the employment application did not enter his mind. (14) Nothing further of significance occurred until late July 1985, when the manager went to the employe relations administrator to seek advice on the best way to resolve what he perceived to be a communication problem of the claimant, which seemed to be adversely affecting the claimant's job performance. (15) During the discussion with the employe relations administrator, the claimant's manager mentioned the jobs which the claimant had not revealed on his employment application. (16) The employer relations administrator then became concerned about the possibility that the claimant had willfully withheld pertinent information when he applied for work. (17) The employe relations administrator interviewed the claimant on August 13, 1985, and determined that the claimant's failure to fully complete the employment application had not been due to any inability or misunderstanding on the part of the claimant. (18) The administrator referred the matter back to the claimant's manager, who in turn decided that the claimant should be discharged because he had falsified his application for employment. (19) At the time the claimant was notified of his discharge on August 16, 1985, he was specifically told that he was being discharged for misrepresentation on his application for employment."

After finding that petitioner's testimony was not credible, the referee explained, in relevant part:

"Probably the most troubling aspect of the case was long delay between the time the manager learned that the claimant had worked in the United States, and the time the claimant was finally discharged. The manager learned about the claimant's other jobs in December 1984, but he testified that initially he was only concerned about the claimant's apparent lack of candor or willingness to communicate openly with his co-workers. He did not think about the issue of misrepresentation on the employment application. The employe relations administrator raised the issue of falsification of the employment application in late July 1985 when the manager was seeking advice on how to assist the claimant with the job performance problem. That the manager did not think about misrepresentation on the employment application is not surprising. As the quality assurance manager, he was concerned about the technical areas of production. The question of misrepresentation was first raised by the individual in whose

area of expertise this problem would fall—the employe relations administrator. Consequently, the fact that the claimant's manager did not think about the possibility of misrepresentation does not mean that the employer condoned any misrepresentation on the employment application."

Petitioner contends that there is not substantial evidence in the record to support the referee's and, thus, EAB's finding that employer did not condone his failure to disclose some of his prior employment. He argues that his manager was the employer's agent for purposes of condoning any omission by him in his employment application and that his manager knew about the omission in December, 1984, and condoned it until August, 1985, when he was fired.

The manager who interviewed petitioner at the time he applied for work inquired about petitioner's recent employment in the United States. After learning in December, 1984, that petitioner had intentionally misrepresented the facts, he allowed petitioner to continue working and, in fact, that same manager gave petitioner a favorable work review in January, 1985. EAB has not satisfactorily explained why the manager's actions do not amount to condonation of the misrepresentation. The referee's explanation that it is was "not surprising" that the manager "did not think about misrepresentation" does not rationally follow from the finding that employer's employment application requires that every applicant "fully" reveal prior work history and from the finding that the manager had interviewed petitioner for his position and that he had questioned petitioner about his prior employment. Further, the explanation appears inconsistent with the finding that the manager "was concerned that [petitioner] had not told him of this prior employment" and that he questioned [petitioner] about this matter in late December 1984 or early January 1985." Without other evidence to explain EAB's conclusion that the manager's conduct did not amount to condonation by the employer, that conclusion is not adequately explained. *See Trebesch v. Employment Division,* 68 Or App 464, 467, 683 P2d 1018, *aff'd* 300 Or 264, 710 P2d 136 (1985).

Reversed and remanded for reconsideration.